```
            UNITED STATES BANKRUPTCY COURT
           MIDDLE DISTRICT OF NORTH CAROLINA
                     DURHAM DIVISION
```

IN RE:                        )
                              )
Ted Rafael Sauls,             )   Case No. 12-80094C-13D
                              )
      Debtor.                 )

## MEMORANDUM OPINION

This case came before the court on March 8, 2012, for hearing on the Debtor's Amended Motion Seeking Turnover of Property and/or Sanctions against Universal Delights, Inc., d/b/a Reliable Motors ("Motion"). Terry D. Fisher appeared on behalf of the Debtor, Richard Polidi appeared on behalf of Universal Delights, Inc., d/b/a Reliable Motors ("Reliable") and Benjamin E. Lovell appeared on behalf the chapter 13 trustee, Richard M. Hutson, II. Having considered the Debtor's Motion, Reliable's response, the evidence offered at the hearing and the arguments of counsel, the court finds and concludes as follows:

## FACTS

When this case was commenced on January 22, 2012, the Debtor was the owner of a 2000 Ford Expedition motor vehicle ("Ford"). The Ford was included in the listing of personal property contained in the Schedule B that was filed by the Debtor. The Ford was subject to a security interest and lien held by Reliable and was in the possession of Reliable when this case was commenced, having been repossessed by Reliable on January 18, 2012.

On January 22, 2012, the Debtor's attorney served Reliable with notice of the commencement of this case by mailing a copy of the Notice to Creditors and Proposed Plan (Docket item #2) by first class mail, postage prepaid, properly addressed to Reliable. The notice that was served on Reliable includes the following language:

> The filing automatically stays collection and other actions against the Debtor, Debtor's property and certain co-debtors. If you attempt to collect a debt or take other action in violation of the bankruptcy stay you may be penalized.

In addition to serving notice of the commencement of this case, the Debtor's attorney called an officer of Reliable on the telephone on January 22, 2012, informed him of the filing of this case and requested that Reliable return the Ford to the Debtor. In addition, within a day or two after the commencement of this case, the Debtor went to Reliable's place of business in Durham in an effort to obtain possession of the Ford from Reliable. Even though the Debtor told Reliable's employee that he had filed a bankruptcy case and despite the telephonic notice and demand from the Debtor's attorney, Reliable refused to return the Ford or to allow access to the Ford in order for the Debtor to remove his personal property from the Ford.

Reliable was provided with additional notice of the commencement of this case on February 3, 2012, when Debtor's attorney provided to Reliable's attorney a copy of the Notice of Appointment of Trustee and Meeting of Creditors (Docket item #6)

and a copy of the Notice to Creditors and Proposed Plan (Docket item #2) and again made demand that Reliable turnover the Ford to the Debtor. At the same time, Debtor's attorney also provided to Reliable's attorney proof that the Debtor had insurance coverage in force on the Ford and had made his first plan payment to the chapter 13 trustee following the commencement of this case.

Even though no later than February 3, 2012, Reliable had actual knowledge of the commencement of this case and the existence of the automatic stay and had been notified that there was insurance coverage on the Ford and that the Debtor had made his first plan payment, Reliable nonetheless refused to turnover possession of the Ford to the Debtor and still had possession and control of the Ford on March 8, 2012, when the hearing on the Debtor's Motion was held.

ANALYSIS

A.  Claim for Turnover

The Debtor first contends that he is entitled to an order requiring Reliable to turnover possession of the Ford. The court agrees that the Debtor is entitled to the requested relief despite the Ford having been repossessed before this case was commenced. As pointed out by the court in In re Montgomery, 29 B.R. 609, 611 (Bankr. E.D.N.C. 1983), a debtor has redemption rights under N.C. Gen. Stat. § 25-9-623 with respect to property that has been repossessed. In holding that the debtor in Montgomery was entitled

to turnover of a vehicle that had been repossessed pre-petition in order to exercise those redemption rights through a chapter 13 plan, the court stated:

> Redemption may be accomplished under N.C.G.S. § 25-9-506 [now § 25-9-623] "at any time before the secured party has disposed of the collateral. . . ." As long as the secured creditor's rights with respect to the collateral are being adequately protected the automatic stay of 11 U.S.C. § 362(a) will prohibit the secured creditor from "disposing" of the collateral and thus extend the time for the Debtor's redemption rights.

This case was filed before Reliable disposed of the Ford. The Debtor has no other vehicles. The Debtor has regular employment, has offered adequate protection to Reliable and has proposed a realistic plan under which the secured claim of Reliable is to be paid. The Ford is needed by the Debtor for transportation to and from his job, as well as for the personal needs of his family. Under such circumstances, the Debtor is entitled to recover possession of his automobile.

B. Claim for Damages for Stay Violation

The Debtor also seeks damages for violation of the section 362 automatic stay. The Debtor contends that there has been a willful violation of the automatic stay by Reliable. Specifically, the Debtor contends that Reliable violated section 362(a)(3) which prohibits any act "to exercise control over property of the estate" and that he was injured and damaged as a result of such violation.

The imposition of sanctions or damages for a willful violation of the automatic stay requires a showing that 1) the conduct at issue constituted a violation of the automatic stay; 2) the violation was willful; and 3) the debtor was injured as a result of the violation. <u>Hamrick v. United States (In re Hamrick)</u>, 175 B.R. 890, 893 (W.D.N.C. 1994); <u>Foreston Coal Int'l, Inc. v. Red Ash Coal & Coke Corp. (In re Red Ash Coal & Coke Corp.)</u>, 83 B.R. 399, 403 (W.D. Va. 1988).

The Debtor's evidence showed both that the conduct of Reliable constituted a violation of section 362(a)(3) and that such conduct occurred after Reliable had actual knowledge of this case and thus was a willful violation. The applicable rule is stated in <u>In re Dillard</u>, Case No. 01-10439, 2001 WL 1700026, *1, *3 (Bankr. M.D.N.C. Apr. 17, 2001):

> Although satisfied that an automobile owned by the debtor that was repossessed pre-petition remains property of the estate, the court is not willing to adopt a rule under which such property must be returned by the creditor without the creditor being provided adequate protection. In the typical Chapter 13 case, in order to provide adequate protection for turnover of a motor vehicle, the debtor must provide the creditor with proof that the vehicle is covered by collision insurance and must have made the first plan payment to the Chapter 13 Trustee. While the creditor is entitled to retain possession until adequate protection has been provided, the creditor must act in good faith and risks the imposition of sanctions by frivolously opposing turnover of property of the estate that was repossessed pre-petition.

The evidence establishes that Reliable had actual knowledge that this case had been filed on January 22, 2012. Reliable first

received telephonic notice from Debtor's attorney. Then, within a day or two after this case was filed, the Debtor provided further actual notice to Reliable when the Debtor went to Reliable's place of business in an effort to regain possession of the Ford and notified employees in charge of the premises that this case had been filed. Thereafter, on February 3, 2012, the Debtor's attorney provided copies of documents that showed that this case had been commenced on January 22, 2012, and that the automatic stay was in effect. No later than February 3, 2012, the Debtor provided Reliable with proof that the Ford was covered by insurance and that the Debtor had made his first plan payment. Moreover, the schedules filed by the Debtor contained information regarding his income and expenses that reflected an ability to fund the proposed chapter 13 plan under which Reliable's secured claim was to be paid. Notwithstanding these circumstances and actual knowledge that this case had been commenced, Reliable refused to surrender possession of the Ford. Nor did Reliable act promptly (or at all) to obtain additional adequate protection or relief from the automatic stay and still had not done so when the Debtor's Motion was heard on March 8, some 45 days after the commencement of this case. Under these circumstances, Reliable's refusal to surrender possession of the Ford and its continuing possession of the Ford after the Debtor had proffered adequate protection constituted a violation of the prohibition of section 362(a)(3) against acts to

obtain possession of property of the estate or exercise control over property of the estate. Moreover, such violation clearly was willful.

In order to prove a willful violation, the Debtor is not required to show that the creditor had the specific intent to violate the stay. In re Atl. Bus. and Comty. Corp., 901 F.2d 325, 329 (3d Cir. 1990); In re Sharon, 200 B.R. 181, 200 (Bankr. S.D. Ohio 1996). It is sufficient to show that the party knew of the existence of the bankruptcy case and that the creditor's actions were intentional. Id. A violation of the automatic stay is willful when "[t]here is ample evidence in the record to support the conclusion that [the creditor] knew of the pending petition and intentionally attempted to [continue collection procedures] in spite of it." Hamrick, 175 B.R. at 892 (quoting Budget Serv. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292-293 (4th Cir. 1986)); Mitchell Construction Co., Inc. v. Smith (In re Smith), 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995). The evidence in this case conclusively established that Reliable's refusal to surrender possession and its continued control of the Debtor's automobile occurred and continued after Reliable had actual knowledge of this case and, thus, constituted a willful violation.

The consequences of violating the automatic stay are set forth in section 362(k), which provides that:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of

> a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

The use of "shall" in section 362(k)(1) means that in the case of a willful violation of the section 362 stay, the award of any actual damages is mandatory. <u>Davis v. IRS</u>, 136 B.R. 414, 423 n.20 (E.D. Va. 1992); <u>In re Sharon</u>, 200 B.R. at 200. However, the burden is on the debtor to demonstrate the extent of any damages. <u>Official Unsecured Creditors' Comm. of Gen. Homes Corp. v. American Sav. and Loan Ass'n of Fla. (In re Gen. Homes Corp. and FGMC, Inc.)</u>, 181 B.R. 870 (Bankr. S.D. Tex. 1994)(quoting <u>In re Alberto</u>, 119 B.R. 985 (Bankr. N.D. Ill. 1990)). "The court cannot award damages, costs or fines where none have been proven, even if both Rule 9011 and 11 U.S.C. § 362 have been violated." <u>Id</u>. <u>Cf</u>. <u>In re Withrow</u>, 93 B.R. at 439 (awarding nominal actual damages of $100 where the debtor offered no evidence of actual damages beyond minor aggravation).

In the present case, the Debtor has established that actual damages were sustained as a proximate result of the willful violation of the stay by Reliable consisting of attorney's fees related to and necessitated by the willful violation of the

automatic stay by Reliable.  The attorney's fees incurred by the Debtor as a result of the wilful violation of the automatic stay are in the amount of $2,630.00 for the services rendered by Debtor's attorney, including communicating with Reliable and its attorney, preparing and filing the motion seeking relief against Reliable, preparing for the hearing and appearing at the hearing, which services are described in detail in the application filed by Debtor's attorney (Docket item #30).  The requested fees are based upon the attorney having spent 13.15 hours in performing such services at an hourly rate of $200, which the court finds to be a reasonable amount of time for the services provided and a reasonable rate of compensation for such services.

Under section 362(k)(1), an award of punitive damages is within the discretion of the trial court and proper only in appropriate circumstances.  <u>Davis v. IRS</u>, 136 B.R. 414, 423 n.20 (E.D. Va. 1992).  Appropriate circumstances ordinarily are those in which the creditor has demonstrated egregious, vindictive or intentional misconduct.  <u>McHenry v. Key Bank (In re McHenry)</u>, 179 B.R. 165, 168 (9th Cir. B.A.P. 1995); <u>Lovett v. Honeywell</u>, 930 F.2d 625, 628 (8th Cir. 1991).  The willful violation of the automatic stay by Reliable involved egregious and intentional misconduct on the part of Reliable which warrants the imposition of punitive damages against Reliable.  The evidence conclusively established that Reliable had actual knowledge that this case had been

commenced. Reliable received telephonic notice on the filing date, followed by service by mail of court documents evidencing the filing, followed by the Debtor providing further actual notice within a day or two thereafter, followed by the Debtor's attorney also providing copies of court documents to Reliable's attorney. Yet Reliable not only refused to return the Ford, but also refused to allow the Debtor to remove personal property from the vehicle and initially refused to allow Debtor's insurance agent to have access to the vehicle. Such obstinate and dogged refusal and the resulting willful stay violation then continued for more than 30 days, even up to the day of the hearing. As a result of such egregious and willful misconduct on the part of Reliable, the court finds and concludes that the Debtor should recover punitive damages of $3,500.00 from Reliable with such punitive damages to be resolved by reducing the amount of the indebtedness secured by Reliable's lien on the Ford by the sum of $3,500,00.

A separate order in accordance with this memorandum opinion is being entered pursuant to Rules 9014 and 7058 of the Federal Rules of Bankruptcy Procedure.

This 10th day of April, 2012.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Terry D. Fisher, Esq.
401 N. Mangum Stret
Durham, NC 27701

Richard Polidi, Esq.
2501 Blue Ridge Road, Suite 250
Raleigh, NC 27607

Richard M. Hutson, II, Chapter 13 Trustee